**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH ANTHONY STAFFORD, | No.  2:16-CV-1403-JAM-DMC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| DOSS, et al., | |
| Defendants. | |

Plaintiff, who is proceeding pro se, brings this civil rights action.  Pending before the Court is Defendants' motion for summary judgment, ECF No. 67.  The matter was submitted on the papers without oral argument.

## I.  BACKGROUND

### A.    Procedural History

The Court screened Plaintiff's original complaint and found it stated a claim for relief against Defendant Lopez but not against the other named defendants.  See ECF No. 14. The Court summarized Plaintiff's original allegations as follows:

> . . .Plaintiff claims that he filed a sexual misconduct charge
> against a staff member in November 2015, after which he began to
> experience retaliation from other correctional officers. Plaintiff states that
> defendants "participated in retaliatory practices." Specifically, plaintiff
> alleges that defendant Lopez told him: "When you write my staff up I

1

encourage them to push back." According to plaintiff, defendant Doss
retaliated by preventing him from reporting to his work assignment on
October 21, 2015. Plaintiff adds that, upon asking to speak with a
supervisor, he was restrained, placed in a cage "for hours," and denied
access to the bathroom or his anxiety medication. Plaintiff also complains
that he underwent "ongoing verbal harassment" and excessive cell
searches and resulting confiscation of personal property. Finally, plaintiff
claims that he was transferred to a different facility "at a great distance
from family members. . . ."

Id. at 2.

Regarding the sufficiency of Plaintiff's allegations, the Court stated:

Plaintiff appears to state a claim for relief against defendant
Lopez, who is alleged to have known that plaintiff engaged in protected
activity (i.e., filed a sexual misconduct charge against a staff member in
2015) and taken adverse action (i.e., encourage officers under his
supervision to "push back") because of that protected activity ("when you
write my staff up"). Plaintiff has not, however, stated a claim for relief
against any other defendant because he has not alleged that any defendant
other than Lopez had knowledge that plaintiff filed a staff complaint.
Additionally, to the extent other defendants took adverse action against
plaintiff, he has not alleged any facts to show that they did so because
plaintiff engaged in protected activity. Rather, plaintiff's allegations
suggest that other defendants acted on defendant Lopez' instruction, and
there are no facts alleged to indicate that defendant Lopez told any of the
other defendants why he was ordering them to "push back." In addition,
other than defendants Lopez and Doss, plaintiff does not indicate what the
named defendants are alleged to have done. Plaintiff complains of various
instances of retaliation, but does not state which defendants were involved.

Id. at 3-4.

Plaintiff was provided an opportunity to amend the complaint.

Plaintiff filed a verified first amended complaint, which the Court deemed

appropriate for service on October 25, 2018.  See ECF No. 21.  Defendant Lopez filed an

answer to the first amended complaint on January 14, 2019.  See ECF No. 26.  Defendants

Doss, Zuniga, and Ibarra filed a motion to dismiss on January 15, 2019.  See ECF No. 30.  On

August 8, 2019, Defendants' motion to dismiss was denied by the District Judge and

Defendants Doss, Zuniga, and Ibarra were ordered to file an answer within 30 days.  See ECF

No. 38.  Defendants filed their answer on September 10, 2019.  See ECF No. 40.  On March 5,

2020, the Court issued a schedule for the litigation.  See ECF No. 54.  Discovery is closed and

Defendants' motion for summary judgment was timely filed on February 8, 2021.

/ / /

2

1       **B.**    <u>**Plaintiff's Allegations**</u>

2       This action currently proceeds on Plaintiff's verified first amended complaint.

3 <u>See</u> ECF No. 15.  Plaintiff names as defendants Doss, Ibarra, Zuniga, and Lopez, all of whom

4 are alleged to have been correctional officers during the relevant time period.  <u>See id.</u> at 2.

5 According to Plaintiff, he filed a sexual misconduct claim against a prison staff member on

6 October 10, 2015.  <u>See id.</u> at 3.  Plaintiff alleges Defendant Doss sexually harassed him and,

7 after reporting the conduct to the Associate Warden and the Prison Rape Elimination hotline,

8 he began to experience daily retaliation.  <u>See id.</u> at 4.  Plaintiff claims Defendant Doss "would

9 constantly say and make inappropriate gestures, causing my safety to be put in jeopardy."  <u>Id.</u>

10       Plaintiff also claims Defendant Zuniga "would constantly harass me."  In

11 particular, Plaintiff alleges Defendant Zuniga called him a "faggot" and "rat" in front of other

12 inmates "in an attempt to cause me injury or death with the hope the inmates may target me."

13 <u>Id.</u>  Plaintiff further claims Defendant Zuniga then locked him in a cage for four hours without

14 allowing him to use the restroom or obtain medical attention for his anxiety.  <u>See id.</u>

15       Next, Plaintiff alleges Defendant Ibarra ordered a "trainee" to search Plaintiff's

16 cell during which search Plaintiff's television was damaged.  <u>See id.</u>  According to Plaintiff,

17 Defendant Ibarra "would constantly make homosexual jokes about plaintiff. . . ."  <u>Id.</u>

18       Finally, Plaintiff alleges Defendant Lopez called Plaintiff into his office on

19 October 19, 2015, and told him: "When you write my staff up I encourage them to push back."

20 <u>Id.</u>

21       Plaintiff alleges Defendants' conduct gives rise to claims under the Eighth

22 Amendment and Due Process Clause of the Fourteenth Amendment.  <u>See id.</u> at 5.  It is also

23 clear Plaintiff alleges claims based on retaliation in violation of the First Amendment.

24       Attached to Plaintiff's first amended complaint as Exhibit A and referenced in

25 the pleading is a February 16, 2016, memorandum response to an inmate grievance Plaintiff

26 filed concerning the facts alleged in this case.  <u>See id.</u>, Exhibit A.  In the grievance, Plaintiff

27 complained of retaliation by Doss, Zuniga, Ibarra, Lopez, and others.  <u>See id.</u>  According to the

28 memorandum response, Plaintiff's grievance was "partially granted" with a finding the named

staff did in fact "violate CDCR policy with respect to one or more of the issues appealed." ECF No. 15, Exhibit A.

## II.  THE PARTIES' EVIDENCE

### A.    **Defendants' Evidence**

Defendants' motion is supported by a Statement of Undisputed Facts, see ECF No. 67-3, and attached exhibits, see id. at 6-54, 58-67.  According to Defendants, the following facts are undisputed:

Parties

1.    Plaintiff Joseph Anthony Stafford is a former state prisoner who was housed at California State Prison – Solano (SOL) at all times material to the matters at issue. (Defendants' Exhibit A (DX A), declaration of Howell-Jennings and documents contained in Plaintiff's central file, p. 2-3) Plaintiff was transferred from SOL to another institution on October 30, 2015. (DX A, p. 3.)

2.    At all times material to the matters at issue, Defendants were employees of the California Department of Corrections and Rehabilitation (CDCR), and at the time of the alleged events worked at SOL in the following positions: Defendant Lopez was a Correctional Sergeant; and Defendants Doss, Ibarra, and Zuniga were Correctional Officers. (ECF No. 15, Section III.)

Admonishment by Defendant Doss

3.    On October 10, 2015, at approximately 8:00 a.m., Officer Doss was in Housing Unit 15 when he observed Plaintiff in the shower area. (DX A, p. 25-26.) Inmate Hutchinson was on the other side of the privacy screen, with his back toward Plaintiff. (DX A, p. 25.)

4.    Plaintiff was bent over the privacy screen talking into inmate Hutchinson's ear, and it appeared the Plaintiff was in inmate Hutchinson's personal space. (DX A, p. 25.)

5.    Officer Doss watched the two inmates for a couple of minutes, then yelled, "Stafford, get off his back." (DX A, p. 25.)

6.    Doss did not mean the comment to have a sexual connotation but was a security measure as Doss did not know what Plaintiff's intentions were toward inmate Hutchinson. (DX A, p. 25.)

7.    That same day, Plaintiff made a call to the Sexual Misconduct Hotline, claiming that Officer Doss had made "homosexual" comments while Plaintiff was in the shower. (Defendants' Exhibit B (DX B) Audio tape of call made by Plaintiff.)

4

8.      Before the call was connected, Plaintiff can be heard saying, "don't make me laugh man, I gotta be serious about this." (DX B.)

9. An investigation into Plaintiff's allegations of sexual misconduct was undertaken, and Plaintiff's claims against Defendant Doss were found not to be sustained. (DX A, p. 26-27.)

<u>Incident with Defendant Zuniga</u>

10.      On October 21, 2015, Officer Zuniga was working as the C-Facility escort officer when he noticed Plaintiff in the early morning chow line. (DX A, p. 24.)

11.      Plaintiff, who Officer Zuniga believed worked the third watch yard crew, was not supposed to be released with the early workers. (DX A, p. 24.)

12.      Officer Zuniga asked to see Plaintiff's work card, which indicated that Plaintiff was switched to second watch yard crew. (DX A, p. 24.) Officer Zuniga allowed Plaintiff to go into the chow hall that morning, but told Plaintiff only Prison Industry Authority were considered early workers, yard crew was not. (DX A, p. 24.) Zuniga then told Plaintiff that in the future, he should wait to be released for breakfast with the rest of his building. (DX A, p. 254.)

13.      Officer Zuniga did not refer to Plaintiff as a bully, a faggot or a "rat bitch," (DX A, p. 24) but a subsequent recording of Plaintiff indicates that Plaintiff used that language against an officer. (DX C.)

14. Officer Zuniga called Officer Ibarra and advised Ibarra that Plaintiff was to be released to chow hall with the rest of his building. (DX A, p. 25.)

<u>Incident with Defendants Ibarra and Zuniga</u>

15.      On October 22, 2015, Plaintiff came down to the podium where Ibarra was working holding his vest and told Officer Ibarra that he was going to work. (DX A, p. 25.) Officer Ibarra told Plaintiff that he had to wait for the building's yard release. (DX A, p. 25.)

16.      Plaintiff then told Officer Ibarra that he wanted to speak with a Lieutenant and was again told to wait until the yard was released. (DX A, p. 25.)

17.      Plaintiff then told Officer Ibarra to place him in cuffs, but Officer Ibarra replied that Plaintiff hadn't done anything to warrant being placed in restraints. (DX A, p. 25.) Plaintiff responded, "I will now," and exited the building against Officer Ibarra's express orders. (DX A, p. 25.)

18.      Officer Ibarra ordered the inmates on the yard to get down, but Plaintiff ignored the order and continued standing. (DX A, p. 25.)

19.      Officer Zuniga placed Plaintiff in restraints, and escorted Plaintiff to holding cell number 2. (DX A, p. 25.)

/ / /

20.     During a phone call between Plaintiff and his son on October 23, 2015, Plaintiff admits going "off" on an officer and referring to the officer as a bully, a faggot and a rat-bitch. (Defendants' Exhibit C (DX C) audiotaped telephone conversation between Plaintiff and his son.) Plaintiff also referred to Plaintiff as "fat slobs." (*Id.*)

21.     Plaintiff was placed into holding cell number 2 at approximately 6:45 a.m. (DX A, p.    5.) At that time, Plaintiff had no accommodations that limited his ability to sit or stand. (DX A, p. 6-7.) Plaintiff also received all medication that he was supposed to receive on that date. (Defendants' Exhibit D (DX D), declaration of M. Muhr and documents from Plaintiff's medical file, p. 1-3.)

22.     Plaintiff's placement was ordered by Lieutenant Frey. (DX A, p. 5.)

23.     Officer Zuniga searched the cell for contraband, but nothing was found. (DX A, p. 5.)

24.     The holding cell log shows that Plaintiff was monitored every fifteen minutes. (DX A, p. 5.)

25.     At 8:00 a.m., Plaintiff was offered a water and bathroom break, but he refused. (DX A, p. 5.)

26.     At 9:00 a.m., Plaintiff was released from the cell to use the restroom. (DX A, p. 5.)

27.     Plaintiff was released from the holding cell at 10:30 a.m., back to general population. (DX A, p. 5.)

<u>Plaintiff's Placement in Administrative Segregation</u>

28.     On October 23, 2015, Lieutenant Brown authored an administrative segregation placement notice, stating that Plaintiff was being removed from the general population and placed into administrative segregation pending the completion of an investigation into Plaintiff's allegations of safety concerns related to staff. (DX A, p. 30.) Plaintiff had filed a grievance indicating that he was being harassed by staff because he filed a sexual misconduct charge against another officer. (*Id.*)

29.     Plaintiff was retained in administrative segregation until he was transferred to another institution on October 30, 2015. (DX A, p. 2-3.)

30.     Before Plaintiff filed a complaint, Officer Ibarra had no idea that Plaintiff had filed a grievance of any kind against Officer Doss. (DX A, p. 25.)

ECF No. 67-3, pgs. 1-5.

/ / /

/ / /

/ / /

Defendants' Statement of Undisputed Facts references the following exhibits:

DX A          Exhibit A – The declaration of A. Howell-Jennings, the Litigation Office Technician for the California Department of Corrections and Rehabilitation (CDCR), with attached authenticated portions of Plaintiff's prison file.  See id. at 6-54.

DX B          Exhibit B – A CD containing an audio recording of an October 10, 2015, telephone conversation.  See Lodged Exhibit.

DX C          Exhibit C – A CD containing additional audio recordings.  See Lodged Exhibit.

DX D          Exhibit D – The declaration of Margaret Muhr, the custodian of Health Records for CDCR authenticating the documents attached to DX A.  See ECF No. 67-3, pgs. 58-67.

**B.      Plaintiff's Evidence**

In response to Defendants' motion, Plaintiff has submitted a Statement of Disputed Facts.  See ECF No. 69.  Plaintiff contends:

1.      Plaintiff was never bent over the privacy screen, or in inmate Hutchinson's personal space.  (Hutchinson declaration).

2.      Doss's comment was sexual in nature.  (Hutchinson declaration).

3.      Plaintiff never received a copy of the phone call recording at DX B, but agrees the phone call was "'serious' reporting Doss's misconduct to the PREA hotline."

4.      "Just because Doss says it's not true doesn't make it a fact."

5.      "I was supposed to be released early like I have been every morning for the last 2 years until I reported Doss. . . ."

6.      Plaintiff was not allowed to go to chow by Zuniga (Ibarra's "statement AO25").

7.      Zuniga called Plaintiff a "faggot" and a "rat bitch;" Plaintiff called Zuniga a "'bully' because of his mistreatment and abuse of power." (DX C).

8.      Ibarra knew where Plaintiff was going "since I've been going to the same gym since I've been in that building at that time."

9.      Plaintiff said: "if I've done something wrong, put me in handcuffs." ("115 found not guilty").

/ / /

10.     Ibarra did not order Plaintiff to get down, "but to stop in which he complied." (witness testimony in rules report).

11.     Plaintiff did not call an officer a "faggot" and a "rat bitch." Plaintiff wrote "602" against Zuniga for being a bully and calling the Plaintiff a "faggot" and "rat bitch" in an attempt to put Plaintiff's safety in jeopardy. (DX C).

12.     Plaintiff was placed in a holding cell for four hours and denied "early morning psychiatric medication." DX D "leaves out what time I received my meds and long-term medical issues."

13.     Plaintiff was never released to use the restroom and was released at "10:45." The last check before release was "10:30." (DX A, pg. 5).

14.     Plaintiff did not make allegations of safety concerns related to staff, but sexual misconduct of staff.  Lt. Brown felt that Plaintiff's safety may be in jeopardy and placed Plaintiff in Administrative Segregation "for his safety from staff." (DX A, pg. 32).

15.     Plaintiff was the one arriving at the shower, not the one waiting outside the shower ("DUF, 3-4").

16.     Plaintiff believes Doss's comment "Stafford get off his back" is sexual misconduct.

17.     Plaintiff believes being called a "faggot" is a slur.

18.     Plaintiff believes "the AG not turning over discovery their motion of Summary Judgment should be denied. . . ."

19.     Plaintiff was not a troublesome inmate who refused to follow the rules, but a victim "of a falsified rule report that he was found not guilty of by a SHO." ("attc adjudicated rules report.")

20.     "Plaintiff did establish the nexus between the retaliatory act and the protected activity, by stating never having a problem in 10 years with any of the Defendants until he exercised his Constitutional Rights then being terrorized by said officers for 2 weeks ultimately being moved to another institution for his safety from staff. (declarations and every exhibit.)"

21.     "Plaintiff suffered adverse action, being moved away from his family, locked in AD SEG, property loss, and mental abuse that Plaintiff is still going through counseling from PTSD he's suffering. (Appeal #15-02565, original complaint.)"

22.     Plaintiff's placement could never be justified because it's against policy.  (citations omitted).

ECF No. 69, pgs. 1-2.

///

8

1        Plaintiff offers the following "Conclusion" to his statement:

2        Plaintiff was sexually harassed by Defendant Doss.  Sgt. Lopez and Doss
3        tried to use direct intimidation for reporting Doss's sexual misconduct.
         Ibarra and Zuniga [retaliated against] Plaintiff for reporting Doss.  Ibarra
         falsified a rules violation.  Zuniga wrongfully and willfully put Plaintiff
4        in a cage for hours.  Zuniga called Plaintiff a homosexual slur putting his
         safety in jeopardy.  Zuniga called Plaintiff a "rat" in front of other
5        inmates was a direct threat to his life and safety.  Plaintiff had no
         previous altercation with any of the defendants until he reported Doss.
6        For these reasons Plaintiff is entitled to his day in court and result a trial
         date.

7
         Id. at 3.
8

9        Plaintiff's statement is supported by citation to Defendants' exhibits, as well as

10   the following attached declarations:

11       Declaration of Joseph Stafford, dated February 13, 2021.  See ECF
         No. 69, pg. 5.
12
         Plaintiff states that Defendant Doss made a "homosexual comment" about
13       him "for his pleasure" and that the comment put Plaintiff at risk of "unwanted
         sexual harassment or even rape."  Id.
14
         Declaration of Derrick Hutchinson, dated February 12, 2021.  See id.
15       at 6.

16       Mr. Hutchinson states that he was dressed standing outside the shower in
         Building 15 on October 15, 2015, and, when Stafford entered the shower, he
17       asked Stafford "what time was his visit?"  According to Mr. Hutchinson,
         Doss then yelled out "Stafford, get off his back" and started laughing.  Mr.
18       Hutchinson says that Plaintiff was never in his personal space and that "
         Doss comment was not warranted."  Id.
19
         Declaration of Sean Gage, dated February 13, 2021.  See id. at 7.
20
         Mr. Gage states that he was living in 15-Building during the entire year
21       of 2015.  He states he witnessed the treatment of Plaintiff after he reported
         Doss.  Mr. Gage states: "I personally witnessed the treatment of Mr.
22       Stafford after he reported CO doss change dramatically by our building
         officer Ibarra in a negative way."  Id.  Mr. Gage also states that it was
23       "common knowledge" that "many officers" had "a problem" with Plaintiff
         after October 10, 2015.  Id.
24
         Declaration of Joseph Stafford, dated January 14, 2021.  See id. at 8.
25
         In his second declaration, Plaintiff recites portions of the timeline of this
26       litigation.  See id.

27   ///

28   ///

9

1  Plaintiff also attaches to his opposition to Defendants' motion for summary

2  judgment various discovery requests served on Defendants and motions filed with the Court

3  during the course of this litigation.  See id. at 11-17.  Plaintiff also submits email exchanges

4  with defense counsel.  See id. at 18-19.  Next, Plaintiff attaches what appear to be portions of

5  Plaintiff's prison file.  See id. at 20-36.

6

7  ### III.  STANDARD FOR SUMMARY JUDGMENT

8  The Federal Rules of Civil Procedure provide for summary judgment or summary

9  adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

10  together with affidavits, if any, show that there is no genuine issue as to any material fact and that

11  the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

12  standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

13  56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

14  the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

15  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

16  moving party

17
18  . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
19

20  Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

21  If the moving party meets its initial responsibility, the burden then shifts to the

22  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

23  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

24  establish the existence of this factual dispute, the opposing party may not rely upon the

25  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

26  form of affidavits, and/or admissible discovery material, in support of its contention that the

27  dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

28  opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

10

affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  <u>See</u> Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, <u>see</u> <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, <u>see</u> <u>Matsushita</u>, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." <u>Anderson</u>, 477 U.S. at 251.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

**IV.  DISCUSSION**

2          In their motion for summary judgment, Defendants argue: (1) Plaintiff cannot

3 state a claim for sexual harassment under the Eighth Amendment; (2) Plaintiff's First

4 Amendment retaliation claim fails because he does not allege he was subject to an adverse

5 action or that his speech rights were chilled; (3) Plaintiff fails to allege sufficient facts to

6 support a claim for conspiracy; (4) Plaintiff's due process claim related to placement in a

7 holding cell fails as a matter of law; (5) Plaintiff fails to state an Eighth Amendment claim

8 based on placement in a holding cell; and (6) Defendants are entitled to qualified immunity.

9         **A.**     <u>**Eighth Amendment Claims**</u>

10          Defendants contend Plaintiff cannot prevail under the Eighth Amendment on his

11 claims that he was verbally sexually harassed.  <u>See</u> ECF No. 67-2, pgs. 12-14.  Defendants also

12 argue Plaintiff cannot prevail under the Eighth Amendment on his claim he was placed in a

13 holding cell for four hours.  <u>See</u> <u>id.</u> at 20-22.

14          The treatment a prisoner receives in prison and the conditions under which the

15 prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

16 and unusual punishment.   <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>,

17 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

18 of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102

19 (1976).  Conditions of confinement may, however, be harsh and restrictive.  <u>See</u> <u>Rhodes v.</u>

20 <u>Chapman</u>, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

21 "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>,

22 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

23 two requirements are met: (1) objectively, the official's act or omission must be so serious such

24 that it results in the denial of the minimal civilized measure of life's necessities; and (2)

25 subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

26 inflicting harm.  <u>See</u> <u>Farmer</u>, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

27 official must have a "sufficiently culpable mind."  <u>See</u> <u>id.</u>

28 / / /

1              1.      Verbal Sexual Harassment

2              Allegations of verbal harassment do not state a claim under the Eighth

3    Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner]

4    psychological damage."  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also

5    Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

6    In addition, the prisoner must show that the verbal comments were unusually gross, even for a

7    prison setting, and that he was in fact psychologically damaged as a result of the comments.

8    See Keenan, 83 F.3d at 1092.  Addressing verbal sexual harassment, the Ninth Circuit has stated:

9    "the Eighth Amendment's protections do not necessarily extend to mere verbal sexual

10   harassment."  Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004).  While sexual harassment

11   may constitute a violation of the Eighth Amendment, the Ninth Circuit has differentiated between

12   claims of sexual harassment based on verbal abuse alone and those which involve allegations of

13   physical assault, concluding that the former are not actionable.  See Blacher v. Johnson, 517 Fed.

14   Appx. 564 (9th Cir. 2013); see also Wood v. Beauclair, 692 F.3d 1401, 1046-51 (9th Cir. 2012).

15             Defendants argue:

16              . . . Plaintiff's allegations fail to state a claim for relief. When
     assuming the truth of the totality of Plaintiff's allegations, Defendant
17   Doss's conduct does not rise to the level of sexual abuse for purposes of
     the Eighth Amendment. Plaintiff's allegations indicate that Doss may have
18   made unwelcome comments, but as Doss has indicated, he was telling
     Plaintiff to get away from the other inmate, and there was no sexual
19   connotation to his statement. (DUF 6.) The comments were not sexually
     suggestive and did not in any way indicate that Doss to engage in sexual
20   activity with Plaintiff. The comments made by Doss may have been
     misinterpreted by Plaintiff, and seemed inappropriate, however, there is no
21   suggestion that the verbal comments made by Doss were unusually gross
     or vulgar.
22              Although Plaintiff claims that Doss later saw Plaintiff in the chow
     hall and said, "Oh Stafford." This, too, fails to bring the comments by
23   Doss to the level of an Eighth Amendment violation. Here, and
     expressions by Doss were verbal. When a single instance of physical
24   contact, while sexually suggestive in nature, does not satisfy the standard
     set forth in Schwenk, 204 F.3d at 1197, it is unimaginable that Doss'
25   innocuous statements meet the standard of an Eighth Amendment
     violation.
26              Finally, to the extent that Plaintiff is seeking compensatory
     damages for alleged mental or emotional injuries, he cannot do so. 42
27   U.S.C. § 1997e(e). "No Federal civil action may be brought by a prisoner
     confined in a jail, prison or other correctional facility for mental or
28   emotional injury suffered while in custody without a prior showing of

                                        13

physical injury." 42 U.S.C. § 1997e(e). Nowhere in his complaint does Plaintiff reference, describe or suggest any physical injury inflicted on him by Defendant Doss. Rather Plaintiff alleges that his injuries are emotion [sic] in nature. This, of course, is belied by Plaintiff's call to report the alleged PREA violation, when he can clearly be heard telling other inmates, "don't make me laugh man, I gotta be serious about this." (DUF 8.)

ECF No. 67-2, pgs. 13-14.

As Defendants bear the burden, the Court begins with an analysis of their supporting evidence. Defendants cite the following as undisputed facts in supports of their argument:

> DUF 6.   Doss did not mean the comment to have a sexual connotation but was a security measure as Doss did not know what Plaintiff's intentions were toward inmate Hutchinson. (DX A, p. 25.)

> DUF 8.   Before the call was connected, Plaintiff can be heard saying, "don't make me laugh man, I gotta be serious about this." (DX B.)

ECF No. 67-3, pg. 2.

DX A is a document dated February 16, 2016, entitled "Confidential Supplement to Appeal." ECF No. 67-3, pgs. 29-36. At the page stamped "A025," the author of this document recounts an interview with Defendant Doss on December 2, 2015, at which Doss explained his comment "Stafford, get off his back" as follows:

> . . .I know what you are talking about. I walked in the building and was talking to the two cops. I noticed Stafford was standing on the inside of the shower and trying to talk to Hutchinson on the outside. He [presumably Stafford] like in his [presumably Hutchinson] ear. It appeared he [presumably Stafford] was in his [presumably Hutchinson] personal space to I told Stafford to get off his back. My intention was safety and security as he [presumably Stafford] seems to be in his [presumably Hutchinson] space."

Id. at 32.

DX A is thus double hearsay consisting of the author's February 16, 2016, out-of-court statement as to Defendant Doss's December 2, 2015, out-of-court statement.[1] Additionally, the

---

[1]   Defendants do not offer Doss's declaration in support of their motion for summary judgment.

1   document is vague as to who is meant by use of the words "he" and "his."

2            Defendants' citation to DX B is even less useful.  According to Defendant, DX B

3   is a recording containing Plaintiff's October 10, 2015, phone call to the Sexual Misconduct

4   Hotline during which Plaintiff reported that Doss had made "homosexual comments" while

5   Plaintiff was in the shower.  See ECF No. 67-3, pg. 2 (DUF 7).   Defendants contend that

6   Plaintiff can be heard in DX B telling someone just before the call was connected not to make

7   Plaintiff laugh because he has to be "serious about this."  Id. (DUF 8).  Defendants argue this

8   evidence belies Plaintiff's assertion of emotional injury.  See ECF No. 67-2, pg. 14.

9            Defendants would appear to have the Court conclude that Plaintiff's statement

10  shows Plaintiff did not in fact suffer any emotional distress as a result of Doss alleged comment

11  but, instead, felt the entire situation was a laughing matter.  Reaching such a conclusion,

12  however, would require a significant amount of speculation.  In particular, the Court must guess

13  as to why Plaintiff might have been laughing in the first place.  It could be, as Defendants seem

14  to suggest, that Plaintiff was laughing because there was no merit to his claim regarding Doss.

15  Or it could be that Plaintiff was laughing as a nervous response to what Doss is alleged to have

16  done.  Thus, DX B does not conclusively establish the absence of any material fact such as

17  would defeat Plaintiff's claim regarding Doss's alleged comments.

18            Defendants' argument largely rests on Minifield v. Butikofer, 298 F. Supp. 2d

19  900 (N.D. Cal. 2004), and Watison v. Carter, 668 F.3d 1108 (9th Cir. 2012).  See id. at 13-14.

20  According to Defendants:

21          In *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal.
            2004), Plaintiff was housed in his cell when a defendant correctional
22          officer unzipped his clothing and told Plaintiff to grab his penis. 298 F.
            Supp. 2d at 902. When Plaintiff refused, the officer walked away
23          laughing. *Id.* Two days later, the officer did the same thing and brushed
            against Plaintiff's arm before walking away laughing. *Id.* The Court held
24          that Defendant's actions including verbal sexual harassment and a non-
            sexual touching of Plaintiff's arm did not implicate the Eighth
25          Amendment. Id. at 903-904.
                In *Watison v. Carter*, 668 F.3d 1108, 1112–14 (9th Cir., Feb.13,
26          2012), the Ninth Circuit affirmed the dismissal of an inmate's Eighth
            Amendment sexual harassment claim against a correctional officer who
27          allegedly entered plaintiff's cell while plaintiff was on the toilet, rubbed
            his thigh against plaintiff's thigh and "began smiling in a sexual contact
28          (sic)," then left plaintiff's cell laughing. 668 F.3d at 1113. The Ninth

1   Circuit ruled that "[t]he 'humiliation' [the inmate] allegedly suffered from
    the incident with [the officer] does not rise to the level of severe

2   psychological pain required to state an Eighth Amendment claim." *Id.* at
    1113. Moreover, the Ninth Circuit found that "Officer LaGier's alleged

3   wrongdoing was not objectively harmful enough to establish a
    constitutional violation. . ." *Id.* at 1114.

4       In both *Watison* and *Minifield,* the Courts recognized that sexual
    harassment even when accompanied by a brief inappropriate touch from a

5   correctional official does not give rise to a federal cause of action. *See also*
    *Palmer v. O'Connor*, No. 2:11-CV-2927-KJN, 2013 WL 1326207, at *4

6   (E.D. Cal. Mar. 29, 2013) ("Inmate sexual harassment claims that allege
    brief inappropriate touching by a correctional official are generally found

7   to be noncognizable").

8                                       * * *

9       Overall, Courts have repeatedly determined that constitutional
    protections "do not necessarily extend to mere verbal sexual harassment,"

10  and even when coupled with isolated incidents of touching, there is no
    constitutional violation. *See Austin,* 367 F.3d at 1171; *Watison,* 668 F.3d

11  at 1112–13; *Minifield*, 298 F.Supp.2d at 902. Thus, Plaintiff's allegations
    of alleged verbal harassment fails [sic] to state a claim. Accordingly,

12  Plaintiff's Eighth Amendment claim against Defendant Doss should be
    dismissed.

13      <u>Id.</u>

14

15      Essentially, Defendants argue that they are entitled to summary judgment on

16  Plaintiff's verbal sexual harassment claim because, as a matter of law, the verbal harassment

17  alleged by Plaintiff, even if sexual in nature, is not actionable.  The Court agrees.

18      Plaintiff's claim against Defendant Doss is based on the following allegation in

19  the first amended complaint:

20      On 10-10-2015 C.O. Doss falsely accused me of doing
        homosexual acts in the shower to make the other C.O.'s and inmates

21      laugh.

22      ECF No. 15, pg. 4.

23  The first amended complaint contains no allegation that Doss touched Plaintiff.  As to the

24  precise comment allegedly made by Doss, Plaintiff has submitted the declaration of inmate

25  Derick Hutchinson.  <u>See</u> ECF No. 69, pg. 6.  Mr. Hutchinson states that, on October 10, 2015,

26  he was standing outside the shower in Building 15 and Plaintiff had just entered the shower at

27  which point Doss said: "Stafford, get off his back."  <u>Id.</u>  Mr. Hutchinson characterizes this

28  comment as "sexual."  <u>Id.</u>

Initially, the Court observes that Doss's alleged comment – "Stafford, get off his back" – is not necessarily sexual in nature nor unusually gross, even for a prison setting. First, the comment is susceptible to more than one meaning. Doss could have meant the comment figuratively, as in telling Plaintiff to leave inmate Hutchinson alone. Or, Doss could have meant the comment literally, as in telling Plaintiff to stop making physical contact with inmate Hutchinson. Even if the latter, the comment is not necessarily sexual. The Court will, however, resolve these ambiguities in Plaintiff's favor for purposes of this discussion and will presume Doss's alleged comment was sexual in nature, i.e., that he was intimating Plaintiff was engaging in some sort of homosexual activity with inmate Hutchinson.

In this light, Doss's alleged comment was not sufficiently harmful to constitute an Eighth Amendment violation. See Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997) (holding that female guards' visual body cavity searches of male inmates, with pointing and jokes, was not sufficiently harmful for an Eighth Amendment violation). Even more suggestive and direct comments have been held not to violate the Eighth Amendment. See Austin, 367 F.3d at 1171-72 (affirming summary judgment where prison guard exposed himself to a prisoner and said "come suck this white dick, boy"); Blueford v. Prunty, 108 F.3d 251, 254-55 (9th Cir. 1997) (affirming grant of qualified immunity in favor of prison guard who engaged in vulgar, same-sex trash-talk); see also Minifield, 298 F. Supp. 2d at 902 (finding that Eighth Amendment not implicated when correctional officer unzipped his clothing and told Plaintiff to grab his penis).

On these authorities, the Court finds that Doss's alleged comment, if it occurred and was sexual in nature as Plaintiff claims, does not rise to the level of an Eighth Amendment violation. Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim arising from Doss's alleged comment "Stafford, get off his back."

Though not argued by Defendants, Plaintiff also claims that, on October 21, 2015, "C.O. Zuniga called me a homosexual slut 'faggot' and 'rat bitch' in front of inmates. . . ." As with Doss's alleged comment, these comments were also not sufficiently gross to violate the Eighth Amendment. The Court finds that Defendants are also entitled to summary judgment to

1  the extent Plaintiff asserts an Eighth Amendment claim based on Zuniga's alleged comments.

2            Finally, and also not argued by Defendants, Plaintiff claims that Defendant Ibarra

3  "would constantly make homosexual jokes about plaintiff on the microphone. . . ."  As with

4  comments allegedly made by Doss and Zuniga, these comments are not sufficiently gross to

5  violate the Eighth Amendment.  Defendants are entitled to summary judgment to the extent

6  Plaintiff asserts an Eighth Amendment claim arising from Ibarra's alleged jokes.

7          2.      Placement in a Holding Cell

8          According to Defendants:

9          The time Plaintiff remained in a holding cage is insufficient to

10 state a cognizable claim regarding the conditions of his confinement as
   temporarily unconstitutional conditions of confinement do not rise to the
   level of constitutional violations. *See Anderson v. County of Kern,* 45 F.3d

11 1310 (9th Cir. 1995) and *Hoptowit v. Ray,* 682 F.2d 1237 (9th Cir. 1982).
   Accordingly, Defendant are entitled to judgment as a matter of law on

12 Plaintiff's conditions of confinement claim.

13         ECF No. 67-2, pg. 21.

14         Plaintiff claims Defendant Zuniga "locked me in a cage for four hours without

15 letting me use the restroom and denying me my anxiety medication."  ECF No. 15, pg. 4.

16 Defendants' evidence, specifically, portions of Plaintiff's prison file attached at DX A, reflect

17 that Plaintiff was placed in administrative segregation for his safety pending completion of an

18 investigation.  See DUFs 28 and 29.

19         As explained above, Eighth Amendment conditions-of-confinement claims

20 require, objectively speaking, a deprivation that is sufficiently serious.  See Farmer, 511 U.S.

21 at 834.  Subjectively, prison officials must know about and disregard an "excessive risk to

22 inmate health or safety."  Id. at 837.  The conduct must have been wanton.  See id. at 835; see

23 also Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  With respect to administrative

24 segregation, prison officials have a legitimate penological interest in such confinement and, as

25 a result, must be given wide-ranging deference in the execution of practices meant to enhance

26 or preserve order, discipline, and security.  See Anderson, 45 F.3d 1310 (citing Bell v.

27 Wolfish, 441 U.S. 520, 546-47 (1979)).  In Anderson, the Ninth Circuit concluded that

28 confinement in administrative segregation "for most of the day," while unpleasant, does not

1    rise to the level of deliberate indifference.  Id.  In Frost, the Ninth Circuit concluded that

2    "although Frost complains about the . . . conditions in the temporary holding cell, he has not

3    shown that such circumstances ultimately deprived him of the 'minimal civilized measures of

4    life's necessities.'"  Frost, 152 F.3d at 1128 (citing Hudson v. McMilliam, 503 U.S. 1, 9

5    (1992)).

6           Here, the Court agrees with Defendants that Plaintiff's four-hour placement in

7    an administrative segregation holding cell does not rise to the level of an Eighth Amendment

8    violation due to the short duration of the placement.  In Anderson, an administrative

9    segregation placement "for most of the day" did not satisfy the objective prong of the Eighth

10   Amendment.  The four-hour placement complained of in this case does not do so either.

11   Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim arising

12   from his placement in a holding cell.

13          **B.**     **Retaliation Claim**

14          In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

15   establish that he was retaliated against for exercising a constitutional right, and that the retaliatory

16   action was not related to a legitimate penological purpose, such as preserving institutional

17   security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting

18   this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the

19   exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995);

20   Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also

21   show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by

22   the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also

23   Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must

24   establish the following in order to state a claim for retaliation: (1) prison officials took adverse

25   action against the inmate; (2) the adverse action was taken because the inmate engaged in

26   protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the

27   adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

28   / / /

1         Defendants argue:

2            Plaintiff alleges that Defendant Doss said, "Oh, Stafford,"
Defendant Ibarra teased Plaintiff about going to yoga class, Defendant
3     Zuniga told Plaintiff "you are such a fucking baby" and "the only people
who get bullied are faggots and bitches," and Defendant Lopez asking
4     Plaintiff if he belonged to a gang. Plaintiff states that this was retaliation
for Plaintiff' filing a sexual harassment claim against Doss. But all of
5     these statements made to Plaintiff fail to establish a First Amendment
claim for retaliation. Verbal harassment does not violate the Constitution
6     and therefore cannot be the basis for Plaintiff's Retaliation claims. There
is no allegation that Plaintiff suffered any sort of adverse action as a result
7     of the comments made by the Defendants, or a claim that Plaintiff, or any
other inmate, would have been chilled from filing grievances by these
8     sorts of comments. Accordingly, Defendants Doss, Ibarra, Zuniga, and
Lopez are entitled to judgment as a matter of law.
9            Moreover, Plaintiff has not shown that the retaliatory acts were
"because of" his protected activity. There are no allegations that Ibarra,
10    Zuniga, or Lopez knew of Plaintiff's PREA claim against Defendant Doss.
PREA claims are confidential, and there is [sic] no allegations as to how
11    Ibarra, Zuniga, and Lopez learned of the claim. In fact, Defendant Ibarra
has indicated that he had no knowledge about Plaintiff's PREA claim until
12    Plaintiff filed a grievance alleging that Ibarra retaliated against him. (DUF
30.) For this reason, too, Plaintiff's retaliation claim fails.
13

14         ECF No. 67-2, pgs. 15-16.

15         In the first amended complaint, Plaintiff asserts that he experienced daily

16 retaliation after reporting Doss's alleged verbal sexual harassment.  See ECF No. 15, pg. 4.

17 According to Plaintiff: "C.O. Doss would constantly say and make inappropriate gestures. . . ."

18 Id.  Plaintiff adds:

19            After said complaint, C.O. Zuniga would constantly harass me.
On 10-21-2015 C.O. Zuniga called me a homosexual slur "faggot" and
20    "rat bitch" in front of inmates in an attempt to cause me injury or death
with hope the inmates may target me.  He then locked me in a cage for
21    four hours without letting me use the restroom and denying me my
anxiety medication.
22

23         Id.

24 Plaintiff further claims that Defendant Ibarra ordered "his trainee" to search his area.  Id.

25 Finally, Plaintiff states that Defendant Lopez called Plaintiff into his office on October 19,

26 2015, and said: "When you write my staff up I encourage them to push back."  Id.

27 / / /

28 / / /

                 20

1    Defendants' arguments are supported by citation to DUF 30, which in turn relies

2    on DX A, pg. 25. As discussed above in the context of Plaintiff's verbal sexual harassment

3    claim, this document is a report on various interviews conducted relating to Plaintiff's claims.

4    See ECF No 67-3, pgs. 29-36. According to this exhibit, Defendant Ibarra told the author of

5    the document that he was not aware he [presumably Plaintiff] filed a complaint against Doss

6    until after he was "rolled up." Id. at 32. Again, this document constitutes double hearsay.

7    Moreover, it is vague as to the phrase "rolled up" and term "he." Finally, it does not speak to

8    the knowledge of anyone other than Defendant Ibarra.

9    However, there is other evidence in the record to support Plaintiff's claim of

10   retaliation. Notably, in February 2016, prison staff – including the Warden – approved a

11   response to Plaintiff's inmate grievance and concluded that staff violated prison policy. See

12   id. at 28. The appeal was "partially granted." Id. at 27. Additionally, Plaintiff submitted the

13   declaration of Sean Gage who states that he personally witnessed that Plaintiff was treated

14   very differently following the October 10, 2015, incident and that it was common knowledge

15   that many officers had a problem with Plaintiff after this date. See ECF No. 69, pg. 7. It can

16   be reasonably inferred from this that something happened on October 10, 2015 – Plaintiff's

17   report of alleged sexual verbal harassment by Doss – that other correctional officers – perhaps

18   the other defendants – knew about and that, as a result, their conduct towards Plaintiff

19   changed. Finally, Plaintiff states in the verified first amended complaint that Defendant Lopez

20   informed Plaintiff: "When you write my staff up I encourage them to push back." ECF No. 15,

21   pg. 4.

22   The Court cannot conclude that Defendants have met their burden on summary

23   judgment of pointing to the evidence showing the absence of a genuine issue of material fact

24   such as would defeat Plaintiff's retaliation claims as a matter of law. To the contrary, the

25   evidence discussed above, with reasonable inferences, supports the claims. In this regard, the

26   Court observes that Defendants do not offer their own declarations as to what they knew or

27   didn't know about Plaintiff's protected activities, or if and how they responded if they did

28   know about them. On this record, the Court cannot recommend granting summary judgment

21

1    on Plaintiff's retaliation claims.

2        **C.**    **Due Process Claim**

3            Defendants argue Plaintiff cannot prevail on any aspect of a due process claim.

4    Substantively, Defendants assert Plaintiff has no liberty interest in remaining free from placement

5    in a holding cell.  See ECF No. 67-2, pg. 18.  Procedurally, Defendants contend Plaintiff was

6    provided any procedural due process owed to him relating to his temporary placement in

7    administrative segregation.  See id. at 18-20.

8            The Due Process Clause protects prisoners from being deprived of life, liberty, or

9    property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to

10   state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or

11   property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672

12   (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the

13   deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd.

14   of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are

15   defined, by existing rules that stem from an independent source – such as state law – and which

16   secure certain benefits and support claims of entitlement to those benefits.  See id.

17           Liberty interests can arise both from the Constitution and from state law.  See

18   Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976);

19   Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution

20   itself protects a liberty interest, the court should consider whether the practice in question ". . . is

21   within the normal limits or range of custody which the conviction has authorized the State to

22   impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the

23   Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time

24   credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner,

25   515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308,

26   323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in

27   remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

28   / / /

                                          22

Where a substantive due process right is triggered by placement in administrative segregation, certain procedural safeguards must be met. Prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversarial review of the evidence justifying the placement. See Hewitt, 459 U.S. at 476, abrogated in part on other grounds by Sandin, 515 U.S. 472. The prisoner must be provided notice of any charges against him and an opportunity to respond. See id. at 477.

Here, the Court agrees with Defendants' argument that Plaintiff's brief placement in an administrative segregation holding cell does not, substantively, give rise to a protected liberty interest and, for this reason, no procedural guarantees are implicated. As stated above, inmates generally have no liberty interest in remaining in the general population. In Serrano v. Francis, the Ninth Circuit concluded the inmate's retention in administrative segregation for 70 days pending a disciplinary hearing did not give rise to a protected liberty interest. See 345 F.3d 1071, 1078 (9th Cir. 2003). Similarly, in Richardson v. Runnels, the court concluded that a two-week placement in administrative segregation did not implicate a protected liberty interest. See 594 F.3d 666, 672-73 (9th Cir. 2010). In Demerson v. Woodford, the court held that three days in a strip cell did not give rise to a due process claim. See 2009 WL 498199 (E.D. Cal. 2009). In Woodall v. State of California, the court concluded that eight hours in a holding cell did not impose an atypical condition of confinement triggering due process protections of any kind. See 2009 WL 3112021 (E.D. Cal. 2009).

Defendants are entitled to summary judgment as a matter of law on Plaintiff's due process claims.

**D.    <u>Conspiracy</u>**

Without citation to the operative first amended complaint, Defendants state:

> Plaintiff alleges that Defendant Ibarra conspired with an Officer Valdez to search Plaintiff's "area," break Plaintiff's television, and take Plaintiff's property.

ECF No. 67-2, pg. 16.

Defendants also indicate Plaintiff alleges a conspiracy to retaliate: ". . .Plaintiff is claiming that Defendants conspired to retaliate against him because he filed a PREA complaint against Officer

1   Doss." Id. at 17.

2          The Court does not find any conspiracy claims alleged in the first amended

3   complaint.  First, the first amended complaint does not contain any reference to 42 U.S.C. §

4   1985(3), which governs claims of conspiracies to violate civil rights.  Second, and more notably,

5   the first amended complaint is devoid of the word "conspiracy" or allegations to that effect.

6   While Plaintiff claims Defendants acted under color of law, he does not claim that they did so

7   together with a common plan.  The Court finds that summary judgment on the issue of

8   conspiracy is not warranted for the simple reason that no such claims are presented in the first

9   amended complaint.

10         **E.     Qualified Immunity**

11         Government officials enjoy qualified immunity from civil damages unless their

12  conduct violates "clearly established statutory or constitutional rights of which a reasonable

13  person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

14  qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

15  law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

16  immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

17  injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

18  v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

19  the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific

20  context of the case, not as a broad general proposition. . . ."  Id.  "[T]he right the official is

21  alleged to have violated must have been 'clearly established' in a more particularized, and hence

22  more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

23  official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

24  Thus, the final step in the analysis is to determine whether a reasonable officer in similar

25  circumstances would have thought his conduct violated the alleged right.  See id. at 205.

26  / / /

27  / / /

28  / / /

1    When identifying the right allegedly violated, the court must define the right more

2    narrowly than the constitutional provision guaranteeing the right, but more broadly than the

3    factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th

4    Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently

5    clear that a reasonable official would understand [that] what [the official] is doing violates the

6    right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

7    concludes that a right was clearly established, an officer is not entitled to qualified immunity

8    because a reasonably competent public official is charged with knowing the law governing his

9    conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

10   has alleged a violation of a clearly established right, the government official is entitled to

11   qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

12   did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

13   also Saucier, 533 U.S. at 205.

14   The first factors in the qualified immunity analysis involve purely legal questions.

15   See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

16   determination based on a prior factual finding as to the reasonableness of the government

17   official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

18   has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

19   555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

20   most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See

21   Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

22   Defendants argue that they are entitled to qualified immunity on Plaintiff's

23   claim related to verbal sexual harassment because "[i]t was not clearly established in 2015 that

24   a verbal harassment, even verbal sexual harassment, was a violation of Plaintiff's

25   constitutional right."  ECF No. 67-2, pg. 23.  As to Plaintiff's claims related to placement in

26   administrative segregation, Defendants contend: "Nor does Plaintiff have a protected liberty

27   interest in avoiding particular conditions of confinement, especially when the changes in

28   conditions amounts [sic] do not amount to an atypical and significant hardship in relation to the

25

1   ordinary incidents of prison life." Id. at 24.  Defendants do not raise a qualified immunity

2   argument related to Plaintiff's Eighth Amendment claim based on placement in a holding cell or

3   Plaintiff's First Amendment retaliation claim.

4             1.     Verbal Sexual Harassment

5        Defendants argue:

6
> It was not clearly established in 2015 that a verbal harassment,
7
> even verbal sexual harassment, was a violation of Plaintiff's constitutional
> rights. To the contrary, Courts have determined that constitutional
8
> protections "do not necessarily extend to mere verbal sexual harassment,"
> and even when coupled with isolated incidents of touching, there is no
9
> constitutional violation. See Austin, 367 F.3d at 1171; Watison, 668 F.3d
> at 1112–13; Minifield, 298 F.Supp.2d at 902. Thus, none of the named
10
> Defendants would have had notice that their actions were a violation of
> Plaintiff's Eighth Amendment rights.

11        ECF No. 67-2, pgs. 23-24.

12        As discussed in more detail above, the Court finds that Plaintiff's allegations

13   relating to verbal sexual harassment do not rise to the level of an Eighth Amendment violation.

14   Defendants are thus entitled to qualified immunity on this claim.  See Blueford, 108 F.3d at 254-

15   55 (affirming grant of qualified immunity in favor of prison guard who engaged in vulgar, same-

16   sex trash-talk).

17             2.     Placement in a Holding Cell

18        According to Defendants:

19
> Nor does Plaintiff have a protected liberty interest in avoiding
20
> particular conditions of confinement, especially when the changes in
> conditions amounts [sic] do not amount to an atypical and significant
> hardship in relation to the ordinary incidents of prison life. See Sandin v.
21
> Connor, 515 U.S. 472 (1995); Wilkinson v. Dotson, 544 U.S. 74 (2005);
> Cah. In 2005, the Supreme Court held in Wilkinson that non-punitive
22
> confinement in conditions that amount to an atypical and significant
> hardship can infringe on a liberty interest and trigger due process
23
> protections. However, the Supreme Court has declined to establish a
> "baseline from which to measure what is atypical and significant in any
24
> particular prison system." Wilkinson, 545 U.S. at 223 (noting inconsistent
> conclusions among the circuits). To determine whether a particular form
25
> of restraint imposes "atypical and significant hardship" requires
> consideration of conditions, or a combination of conditions or factors, on a
26
> case by case basis. Chappell v. Mandeville, 706 F.3d at 1052 (9th Cir.
> 2013) (citing Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)).

27

28   / / /

1

2

3

4

5

6

    In *Sandin*, the inmate was sentenced to 30 days in punitive (not non-punitive) segregation for allegedly interfering with prison officials during a strip search. The Supreme Court concluded that his case did "not present a dramatic departure from the basic conditions of [his] indeterminate sentence" because the conditions in disciplinary segregation mirrored those in administrative segregation and protective custody. *Sandin*, 515 U.S. at 485-86. There, the inmate was in lockdown 23 hours a day, while the other inmates were confined to their cells 12 to 16 hours a day. The court found his placement in disciplinary segregation for 30 days "did not work a major disruption in his environment." *Id*. Nor was there evidence his placement in disciplinary segregation would affect the duration of his sentence. *Id*. at 487.

7

8

9

    Here, Plaintiff claims that he was retained in a holding cell for approximately four hours. But Plaintiff's placement into a holding cell was the result of Plaintiff's own actions. (DUF 15- 21.) Plaintiff refused to follow orders, and he was placed into a holding cell until it was determined that he could be released back to the general population.

10

11

12

13

14

15

    The Ninth Circuit has declined to identify the baseline for an atypical or significant hardship, but instead focuses on the facts of the particular situation. In *Brown v. Oregon Department of Corrections*, 751 F.3d 983 (9th Cir. 2014), Brown was in solitary confinement for almost 23 hours a day with almost no interpersonal contact, and was denied most privileges given to general population inmates. *Id*. at 988. The Ninth Circuit stated that "these conditions alone might apply to most solitary-confinement facilities," but the "crucial factor distinguishing confinement in the IMU" was the duration of Brown's confinement: "a fixed and irreducible period of confinement in the IMU for twenty-seven months, in contrast to the limited period of confinement with periodic review afforded inmates in ODOC's other segregated housing units." *Id*.

16

17

18

19

20

    Taking the facts in the light most favorable to Plaintiff, the undisputed facts establish that he was placed into a holding cell for less than four hours. Moreover, Plaintiff has not established that any of the named Defendants were responsible for the duration of Plaintiff's time in the holding cell. Based on the conditions and duration of Plaintiff's time in the holding cell, it was not clearly established that such conditions amounted to an atypical and significant hardship triggering due process protections. For this reason, Defendants are entitled to qualified immunity on Plaintiff's due process claim.

21

  ECF No. 67-2, pgs. 24-25.

22

23

24

    Again, as discussed above, the Court finds that Plaintiff's allegations related to a short placement in a holding cell do not give rise to any due process claims.  Defendants are thus entitled to qualified immunity on Plaintiff's due process claims.

25 / / /

26 / / /

27 / / /

28 / / /

1

## V.  CONCLUSION

2          Based on the foregoing, the undersigned recommends that Defendants' motion for

3 summary judgment, ECF No. 67, be denied as to Plaintiff's retaliation claims and granted as to all

4 of Plaintiff's other claims.

5          These findings and recommendations are submitted to the United States District

6 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

7 after being served with these findings and recommendations, any party may file written objections

8 with the court.  Responses to objections shall be filed within 14 days after service of objections.

9 Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

10 Ylst, 951 F.2d 1153 (9th Cir. 1991).

11

12 Dated:  August 12, 2021

13                                        _____
                                         DENNIS M. COTA
14                                        UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28